Jones, J.
 

 It is evident from the opinion of the Court of Appeals that it reversed the judgment of the trial court because it thought that the cause should have been submitted to the jury. In so deciding, the appellate court, overlooked an established rule of procedure heretofore adopted by this court. It appears that, at the close of all the evidence, counsel for both parties moved that the case should be taken from the consideration of the jury, and for judgment in favor of their respective parties. Both motions were overruled, and no request was thereafter made for submission to the jury.
 

 In this aspect of the case, both parties clothed the court with the functions of a jury, and a verdict directed by the trial court should not be set aside unless clearly against the weight of the evidence.
 
 First Nat. Bank
 
 v.
 
 Hayes & Sons,
 
 64 Ohio St., 100, 59 N. E., 893;
 
 Strangward
 
 v.
 
 American Brass Bedstead Co.,
 
 82 Ohio St., 121, 91 N. E., 988;
 
 Nead
 
 v.
 
 Hershman,
 
 103 Ohio St., 12, 132 N. E., 19, 18 A. L. R., 1419..
 

 The trial court found the disputed issues in favor of the plaintiff below, and entered judgment accordingly.
 

 
 *18
 
 As he did in the trial court so now in this court Clark, the defendant in error, relies chiefly on the ' following contentions as giving him immunity from liability on his subscription contract:
 

 (1) On an accord and satisfaction agreed on between him and officers of the company on April 18, 1919, after the corporation had been organized.
 

 (2) That he had withdrawn his offer of subscription, made June 1, 1917, by his letter to Nailler on August 20, 1918. Clark claims that he had the legal right to withdraw his subscription at any time before its acceptance by the corporation.
 

 (3) That, since the agreement of subscription provided that Nailler should “immediately cause the incorporation and organization of the company,” and since the company was not organized until more than a year afterwards, the corporation was not organized pursuant to his subscription agreement, and that, if it were, he had a right to withdraw from said agreement if such organization was not completed within a reasonable time, and that he effected such withdrawal by his letter of August 20,1918.
 

 The first contention, that of accord and satisfaction, has been found by the trial court in favor of the company. Clark relied solely upon the receipts given him by certain officers of the company; except for these receipts, the record nowhere discloses that the company or its officers agreed that his subscription for $5,000 should be canceled or withdrawn. The trial court could well have found upon that feature that no accord and satisfaction was had.
 

 On August 20, 1918, Clark wrote Nailler a letter withdrawing his subscription. It must be noted
 
 *19
 
 that his subscription was made in conjunction with some forty other subscribers for the proposed issue of preferred stock. It was a tripartite agreement, between himself, co-subscribers, and Nailler, who was a signatory to the agreement. Nailler was to receive the entire issue of 4,000 shares of common stock, transfer to the company his processes and formulas, and enter into a contract protecting the company in the employment and use of such processes. Nailler later was to transfer to each sub scriber one share of common for each share of preferred stock subscribed and paid for. .
 

 Counsel for defendant in error make the claim that, since this was a conditional offer to subscribe for stock in a corporation to be formed, Clark had a right to withdraw ,his subscription at any time before the corporate organization was formed and before its acceptance of his subscription.
 

 The general and perhaps the prevailing rule upon that subject is as follows:
 

 “According to*the weight of authority, a subscription may be withdrawn at any time before it is accepted by the corporation, whether made before or after the formation of the corporation, for the reason that until such acceptance there is no binding contract, because, until then, there is no agreement and no mutuality of object, and hence no consideration, and, in the case of subscription made before the corporation is formed, for the additional reason that, until it is formed, the other contemplated party to the contract is not yet in existence.” 2 Fletcher Cyc. Corp., Section 563, and cases therein cited.
 

 This rule seems to be adhered to in this state.
 
 Wallace
 
 v.
 
 Townsend,
 
 43 Ohio St., 537, 3 N. E., 601,
 
 *20
 
 54 Am. Rep., 829. In other jurisdictions it has been held that a contract of this character cannot be revoked except by consent of all the other subscribers. 2 Fletcher Cyc. Corp., 563, supra, and cases cited.
 

 The principle involved is well stated in 7 Ruling Case Law, p. 223, Section 193, as follows:
 

 “The uniform postulate of all the adjudicated cases is that any subscription to stock in a corporation to be thereafter formed is not and cannot be, from the very nature of the transaction, a complete contract — it is an ■ open proposition — until the actual formation of the corporation; it is merely a continuing offer to take stock upon the condition that the corporation be called into existence, and the fulfillment of which condition works at once, without further act on the part of the subscriber, an implied acceptance and concludes a binding contract. # * * If there is a preliminary subscription, and the corporation is thereafter formed as contemplated, within a reasonable time, the subscribers become shareholders without any further act.”
 

 Counsel for Clark claim that, even if no consent of the corporation or its officers was obtained, he had the legal right to withdraw his subscription at any time before the corporate organization whs completed, notwithstanding his subscription agreement provided that when the aggregate amount was subscribed his said “subscription shall thereupon become conclusive and binding upon the subscriber thereto.” Under these circumstances, conceding Clark’s claim, was this organization so far completed on August 20, 1918 (when his letter of withdrawal was written), as to justify a call for a part of his subscription by the incorporators, who had
 
 *21
 
 meanwhile effected a preliminary organization and filed the articles of incorporation with the secretary of state?
 

 The articles of incorporation, signed by the incorporators, were filed with the secretary of state on August 13, 1918. On August 15 Nailler, one of the incorporators, wrote Clark that he would be notified when the first installment of subscription was payable. On August 20 Clark wrote Nailler and asked a withdrawal of his name from the subscription. On the same day, and presumably before Clark’s letter was received, the incorporators, by resolution, appointed Nailler to receive the first installment of 10 per cent, of the capital stock from the subscribers. The testimony further shows that on the 22d of August at least 10 per cent, of the then authorized capital was paid in. The incorporators knew of the subscription agreement at the time of the incorporation, which recited that the .same should become conclusive and binding when the aggregate amount of preferred stock had been subscribed. Pursuant to that agreement the incorporators made the call for the 10 per cent, required to be paid in under the incorporation statutes. Section 8627, General Code, provides:
 

 “Upon filing articles of incorporation, the persons who subscribed then * * * shall be a body corporate, with succession, power to sue and be sued, contract and be contracted with.”
 

 Section 8629, General Code, provides:
 

 “A copy of articles of incorporation so filed, and duly certified by the secretary of state, shall be prima facie evidence of the existence of the corporation therein named. ’ ’
 

 
 *22
 
 Section 8632, General Code, provides that 10 per cent, on each, share subscribed shall be payable at the time o,f making the subscription, and the residue paid in as the directors require.
 

 Section 8633, General Code, provides:
 

 “When ten per cent, of the capital stock is subscribed, the subscribers to the articles of incorporation, .or a majority of them at once shall so certify in writing to the secretary of state. ’ ’
 

 These various sections relating to the preliminary organization of corporations connote the duty of making a call for the first installment of 10 per cent, of the subscriptions, and the duty of certifying to the secretary of state that 10 per cent, of the capital has been subscribed. Not only had the preliminary organization been effected five days previous to Clark’s letter of withdrawal, but it is obvious from the evidence that calls by the incorporators were made before the letter of withdrawal could have been received by them.
 

 While it has been held that in a proceeding in quo warranto the mere filing of articles of incorporation does not make a company an incorporated one, capable of carrying on an insurance business, until the requisite stock has been subscribed and; directors chosen
 
 (State, ex rel.,
 
 v.
 
 Insurance Co.,
 
 49 Ohio St., 440, 31 N. E., 658, 16 L. R. A., 611, 34 Am. St. Rep., 573), we are of opinion that, under the various sections of our corporation Code, “the persons who subscribe” the articles are endowed with the functions of a “body corporate,” upon whom devolves the duty of collecting the 10 per cent, subscriptions to the capital stock which the incorporators must certify to the secretary of state. Alluding to
 
 *23
 
 statutes of similar import, White, J., in
 
 Ashtabula & New Lisbon Rd. Co.
 
 v.
 
 Smith,
 
 15 Ohio St., 328, 334, classified the general powers of a corporation into two classes — one to be exercised before, the other after, the election of directors. “Among the former is the right to receive subscriptions to the capital stock, and, when 10 per centum of the amount shall be subscribed, to elect directors;
 
 * * *
 
 but, the existence of the body corporate does not depend upon the election of, or the right to elect, directors.” This is the feature of the corporate organization applicable to the instant case. The same principle is supported in
 
 Oregon Central Rd. Co.
 
 v.
 
 Scoggin,
 
 3 Or., 161.
 

 Therefore, conceding the legal claim made by Clark that he could withdraw his subscription prior to the organization of the corporation, we are of opinion that, under the circumstances, and under the terms of his subscription, his withdrawal came too late unless he had the right to do so because Nailler did not “immediately cause the incorporation and organization of the company,” etc. In his letter of August 20 Clark did not complain of defect in organization, but relied solely on his insistence that, the company was not organized immediately, within the terms of his subscription agreement. As to his contention that the organization was unreasonably delayed, it may be said on that issue that the trial court found against him. The subscription of Clark and his co-subscribers was made during the existence of the World War. It is not disputed that those who had charge of the formation of the corporation did all they possibly could to effect an immediate organization, but were prevented from so
 
 *24
 
 doing by the action of onr federal government. Clark was presumed to know of these federal regulations, and, had he desired to withdraw his subscription during the period when the Capital Issues Committee had the matter under advisement, he should have exercised his claimed right of withdrawal in the interim and not have waited until after that committee had given its approval of the corporate formation, and until after its preliminary organization was completed and certified to the secretary of state. We attach but little importance to Clark’s claim that the subscription agreement was not complied with because of the fact that its original capital, under government orders, was less than the proposed capital provided for in the subscription agreement. The evidence discloses that the whole transaction contemplated the increase of capital under government supervision and order, and it was increased, in conformance with the subscription agreement, on September 4,. 1918, by filing the certificate of increase with the secretary of state.
 

 Since the disputed facts were found in favor of the plaintiff by the trial court, after each party had submitted the case to it, the Court of Appeals erred in holding that there was any issue in the case which should have been submitted to the jury. The judgment of the Court of Appeals is reversed, and that of the Common Pleas affirmed.
 

 Judgment of the Court of Appeals reversed and that of the Common Pleas affirmed.
 

 Marshall, C. J., Day, Allen, Kinkade, Robinson and Matthias, JJ., concur.